Robert R. Brunelli (admitted *pro hac vice*)
Brian Boerman (admitted *pro hac vice*)
SHERIDAN ROSS PC
1560 Broadway, Suite 1200
Denver, CO 80202
Telephone: (303) 863-2961
Facsimile: (303) 863-0223
rbrunelli@sheridanross.com
bboerman@sheridanross.com
litigation@sheridanross.com

Denise M. De Mory (SBN 168076)
Michael Flynn-O'Brien (SBN 291301)
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 351-7248
Facsimile: (415) 426-4744
ddemory@bdiplaw.com
mflynnobrien@bdiplaw.com

Attorneys for Defendant
K.MIZRA LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NETSKOPE, INC.<br><br>  Plaintiff,<br><br>  v.<br><br>K.MIZRA LLC<br><br>  Defendant. | Case No. 3:25-cv-04833-RS<br><br>**DEFENDANT K.MIZRA LLC'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Filed concurrently with Declaration of Charles Hausman*]<br><br>Date:   September 11, 2025<br>Time:   1:30 p.m. |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 1:30 p.m. on September 11, 2025, or as soon thereafter as the matter may be heard, in Courtroom 3 on the 17th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant K.Mizra LLC ("K.Mizra") will and hereby does move the Court to dismiss Plaintiff Netskope, Inc.'s ("Netskope") Complaint for declaratory judgment of non-infringement of U.S. Patent No. 8,234,705 ("the '705 Patent") (ECF No. 1) pursuant to Rule 12(b)(2) or, in the alternative, Rule 12(b)(1), of the Federal Rules of Civil Procedure without leave to amend, on the grounds that:

1. The Court lacks personal jurisdiction over K.Mizra. *See* Fed. R. Civ. P. 12(b)(2).

2. The Court should, as a matter of discretion, decline to entertain Netskope's premature declaratory relief claim. *See* Fed. R. Civ. P. 12(b)(1).

The Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Charles Hausman, the pleadings in this action, and such other written and oral arguments as the Court may entertain on this Motion.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS ..................................................................................... 1

III. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION ................................................................................. 2

    A. Legal Standard ............................................................................................ 2

    B. Netskope Failed To Establish Personal Jurisdiction Over K.Mizra ........... 4

        a. The Court lacks General Jurisdiction ............................................. 4

        b. The Court lacks Specific Jurisdiction ............................................ 5

            i. Most of the alleged contacts fail to establish that K.Mizra has availed itself of California ............................................. 5

            ii. Most of the alleged contacts are unrelated to Netskope's claims ........................................................................................ 8

            iii. Exercise of jurisdiction over K.Mizra is not reasonable .... 9

IV. THE COURT SHOULD DECLINE TO EXERCISE SUBJECT MATTER JURISDICTION OVER THE DECLARATORY JUDGMENT CLAIM ...... 10

    A. Legal Standard ......................................................................................... 10

    B. Exercising Jurisdiction Over Netskope's Declaratory Judgment Claim Will Inflict Violence on the Public Policies Underlying the Declaratory Judgment Statute ....................................................................................... 11

V. CONCLUSION ................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
    552 F.3d 1324 (Fed. Cir. 2008) ................................................................................. 8, 9

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
    223 F.3d 1082 (9th Cir. 2000) ......................................................................................... 5

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
    444 F.3d 1356 (Fed. Cir. 2006) ............................................................................... 3, 6, 7

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ....................................................................................................... 3

*Calder v. Jones*,
    465 U.S. 783 (1984) ....................................................................................................... 3

*Chamberlain v. Allstate Ins. Co.*,
    931 F.2d 1361 (9th Cir. 1991) ..................................................................................... 11

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ....................................................................................................... 2

*Digi-Tel Holdings v. Proteq Telcoms.*,
    89 F.3d 519 (8th Cir. 1996) ......................................................................................... 10

*Docusign, Inc. v. Clark*,
    No. 21-cv-04785-WHO,
    2022 U.S. Dist. LEXIS 13680 (N.D. Cal. Jan. 25, 2022) .............................................. 9

*Elecs. For Imaging, Inc. v. Coyle*,
    394 F.3d 1341 (Fed. Cir. 2005) ................................................................................... 11

*EMC Corp. v. Norand Corp.*,
    89 F.3d 807 (Fed. Cir. 1996) ....................................................................................... 11

*Fresenius USA, Inc. v. Transonic Sys.*,
    207 F. Supp. 2d 1009 (N.D. Cal. Aug. 31, 2001) ........................................................ 12

*Gates Learjet Corp. v. Jensen*,
   743 F.2d 1325 (9th Cir. 1984) ..................................................................................5

*Gemini Bioproducts, Inc. v. Serum Source Int'l*,
   No. 2-17-cv-01551-JAM-KJN,
   2017 U.S. Dist. LEXIS 187377 (E.D. Cal. Nov. 9, 2017) .....................................8

*Grey & Co. v. Firstenberg Machinery Co., Inc.*,
   913 F.2d 758 (9th Cir. 1990) ..................................................................................5

*Hartford Cas. Ins. Co. v. Teed*,
   No. 18-cv-00479-RS,
   2019 U.S. Dist. LEXIS 226600 (N.D. Cal. May 10, 2019) .................................10

*IMPAX Labs., Inc. v. Medicis Pharm. Corp.*,
   No. C-08-0253 MMC,
   2008 U.S. Dist. LEXIS 111789 (N.D. Cal. Apr. 16, 2008) .................................12

*In re Combustion Equipment Associates, Inc.*,
   838 F.2d 35 (2d Cir. 1988) ..................................................................................12

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ...............................................................................................2

*Invue Sec. Prods. v. Merch. Techs., Inc.*,
   No. 3:12-cv-88-RJC-DSC,
   2012 U.S. Dist. LEXIS 92097 (W.D.N.C. July 3, 2012) .....................................12

*Jones v. Petty-Ray Geophysical, Geosource, Inc.*,
   954 F.2d 1061 (5th Cir. 1992) ...............................................................................7

*Juniper Networks, Inc. v. SSL Servs.*,
   No. C 08-5758 SBA,
   2009 U.S. Dist. LEXIS 112399 (N.D. Cal. Nov. 13, 2009) ..................................6

*Kyocera Int'l, Inc. v. SemCon IP, Inc.*,
   No. 3:18-CV-1575-CAB-MDD,
   2018 U.S. Dist. LEXIS 180135 (S.D. Cal. Oct. 19, 2018) ....................................6

*NanoeXa Corp. v. Univ. of Chicago*,
   No. 10-CV-2631-LHK,
   2010 U.S. Dist. LEXIS 113409 (N.D. Cal. Oct. 21, 2010) ...................................... 7

*New World Int'l, Inc. v. Ford Global Techs., LLC*,
   859 F.3d 1032 (Fed. Cir. 2017) ................................................................................ 6

*Ondot Sys. v. Mantissa Corp.*,
   No. 18-cv-00207-RS,
   2018 U.S. Dist. LEXIS 235998 (N.D. Cal. Aug. 29, 2018) ........................... 3, 4, 9

*Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*,
   57 F.3d 1051 (Fed. Cir. 1995) ................................................................................ 12

*Power Density Sols. LLC v. IBM Corp.*,
   No. 19-cv-03710-RS,
   2020 U.S. Dist. LEXIS 152786 (N.D. Cal. Mar. 20, 2020) ................................ 3, 4

*Radio Sys. Corp. v. Accession, Inc.*,
   638 F.3d 785 (Fed. Cir. 2011) .................................................................................. 4

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
   148 F.3d 1355 (Fed. Cir. 1998) ......................................................................... 9, 10

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) .................................................................................... 2

*SGI Air Holdings II LLC v. Novartis Int'l, AG*,
   192 F. Supp. 2d 1195 (D. Colo. 2002) ................................................................... 10

*Tercica, Inc. v. Insmed Inc.*,
   No. C 05-5027 SBA,
   2006 U.S. Dist. LEXIS 41804 (N.D. Cal. June 9, 2006) .......................................... 4

*Verbick v. Movement Tech. Co.*,
   No. 20-CV-611-TWR (DEB),
   2021 U.S. Dist. LEXIS 253198 (S.D. Cal. Mar. 25, 2021) ...................................... 5

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*,

113 F. Supp. 3d 1027 (N.D. Cal. 2015) ................................................................................ 8

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*,

    848 F.3d 1346 (Fed. Cir. 2017) ........................................................................................ 8

*Yahoo! Inc. v. La Ligue Contre Le Racisme*,

    433 F.3d 1199 (9th Cir. 2006) .......................................................................................... 9

**Statutes**

28 U.S.C. § 2201 .................................................................................................................... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Court does not have personal jurisdiction over K.Mizra, a Delaware LLC that operates in Florida. Beyond a single notice letter, Netskope can only point to an irrelevant case filed in the United States District Court for the Central District of California and connections with California companies related to out-of-state enforcement actions, none of which establish that personal jurisdiction over K.Mizra would comply with due process requirements.

But even if Netskope could establish that personal jurisdiction over K.Mizra was here proper, the Court should still exercise its discretion to here decline jurisdiction. Rather than engage with K.Mizra's offer to discuss a license, Netskope rushed to the Court, apparently hoping to gain some form of leverage over K.Mizra. Accepting jurisdiction here does not serve the objectives the Declaratory Judgment Act was intended to solve. To the contrary, it would discourage attempts to resolve patent licensing issues outside of court, encouraging the premature filing of declaratory judgment actions.

## II. STATEMENT OF FACTS

K.Mizra is a Delaware limited liability company having a principal place of business at 777 Brickell Avenue, #500-96031, Miami, Florida 33131. (Complaint ¶ 26.)[1] K.Mizra does not have any facilities, property, or employees in California. (Declaration of Charles Hausman ("Hausman Decl.") filed concurrently herewith, ¶¶ 3-5.)

K.Mizra is the owner by assignment of U.S. Patent No. 8,234,705 ("the '705 Patent"). (Complaint p. 1.) On March 25, 2025, K.Mizra sent Netskope a letter advising that its Netskope One Zero Trust Access product meets all the limitations of

---

[1] K.Mizra reserves all rights to challenge these allegations in this action but only challenges the allegations here to the extent they are relevant to the issues addressed in this Motion.

several claims of the '705 Patent. (*Id.* ¶¶ 19- 20.) The letter further informed Netskope that K.Mizra was "ready, willing and able" to provide Netskope a license to that and other of its technologies, inviting Netskope to contact K.Mizra's outside counsel to discuss acquiring a license. (Hausman Decl. ¶ 6.) Instead of acting commercially reasonably and engaging in a reasoned conversation concerning the issues raised in the letter, Netskope filed this declaratory judgment action against K.Mizra. (Complaint.) Other than the March 25th letter, there were no communications between K.Mizra and Netskope before this action was filed. (Hausman Decl. ¶¶ 7-8.)

## III. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

### A. Legal Standard

An action is subject to dismissal if the Court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). Where there is no federal statute applicable to determine personal jurisdiction, a district court applies the personal jurisdiction law of the state where it sits. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). California law requires only that the exercise of personal jurisdiction comply with federal due process requirements. *Id.* at 800-01.

Personal jurisdiction over a defendant that does not reside in the forum state may be exercised consistent with due process only if the defendant has either a continuous and systematic presence in the state (general jurisdiction), or minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice" (specific jurisdiction). *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

For general jurisdiction, the inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014). As this Court has explained, this is a high standard, and

"requires that the defendant's contacts with the forum state 'approximate physical presence.'" *Ondot Sys. v. Mantissa Corp.*, No. 18-cv-00207-RS, 2018 U.S. Dist. LEXIS 235998, at *7 (N.D. Cal. Aug. 29, 2018) (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006)). This Court has also noted that "a corporation most commonly will be subject to jurisdiction only in its state of incorporation and/or where it has its principal place of business." *Power Density Sols. LLC v. IBM Corp.*, No. 19-cv-03710-RS, 2020 U.S. Dist. LEXIS 152786, at *6 (N.D. Cal. Mar. 20, 2020).

Specific jurisdiction, on the other hand, focuses on "the relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 788 (1984). In order to determine whether the exercise of specific jurisdiction over a defendant satisfies the requirements of due process, the court "employs a three-prong test, in which we determine whether: (1) the defendant purposely directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1362-63 (Fed. Cir. 2006). In determining whether the exercise of jurisdiction is reasonable, courts consider the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

"The party seeking to invoke the jurisdiction of the federal court shoulders the burden of establishing that such jurisdiction exists." *Ondot*, 2018 U.S. Dist. LEXIS 235998, at *7.

### B. Netskope Failed To Establish Personal Jurisdiction Over K.Mizra

#### a. The Court lacks General Jurisdiction

Although Netskope uses language suggesting a general jurisdiction argument—*compare* Complaint ¶ 29 (referencing "continuous and systematic" contacts with the State of California) *with Ondot*, 2018 U.S. Dist. LEXIS 235998, at *7 (noting general jurisdiction requires "continuous and systematic" activities in the state)—there can be no serious argument that K.Mizra is subject to general jurisdiction here.

K.Mizra is incorporated in Delaware and has its principal place of business in Florida. (Complaint ¶ 26.) This is not the "exceptional case" where general jurisdiction is appropriate elsewhere. *Power Density*, 2020 U.S. Dist. LEXIS 152786, at *6 (quoting *Daimler AG*, 571 U.S. at 139 n.19). Indeed, K.Mizra has no place of business, no employees, and no property in California. (Hausman Decl. ¶¶ 3-5.) If IBM is not subject to general jurisdiction in California by maintaining one of its four main campuses in San Jose for over sixty years, *Power Density*, 2020 U.S. Dist. LEXIS 152786, at *5, the far less extensive contacts identified in the Complaint here certainly cannot justify the exercise of general jurisdiction over K.Mizra.

Indeed, the enforcement activities identified in the Complaint cannot be considered at all. Most of these occurred outside of California, making them irrelevant to the analysis. *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 792 (Fed. Cir. 2011) ("[E]nforcement activities [against forum resident companies] taking place outside the forum state do not give rise to personal jurisdiction in the forum."). And the single unrelated California case is likewise not "even relevant to, the general jurisdictional analysis." *Tercica, Inc. v. Insmed Inc.*, No. C 05-5027 SBA, 2006 U.S. Dist. LEXIS 41804, at *38 (N.D. Cal. June 9, 2006) (citing *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1490 (9th Cir. 1993)).

The remaining allegations relate to interactions with California companies, which likewise fail to meet the high bar for general jurisdiction. *See Bancroft &*

*Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) ("[E]ngaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders.") Indeed, the same types of allegations that Netskope asserts here have been regularly rejected as supporting a finding of general jurisdiction by courts. *See, e.g.*, *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330-31 (9th Cir. 1984) (sending letters and making telephone calls to forum residents insufficient); *Grey & Co. v. Firstenberg Machinery Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990) (contracts with forum residents insufficient); *Verbick v. Movement Tech. Co.*, No. 20-CV-611-TWR (DEB), 2021 U.S. Dist. LEXIS 253198, at *14-15 (S.D. Cal. Mar. 25, 2021) (both insufficient).

### b. The Court lacks Specific Jurisdiction

The Court also lacks specific jurisdiction over K.Mizra, and the allegations in the Complaint fail to show otherwise. The alleged contacts with "other" California entities fail to show that K.Mizra purposefully availed itself of the privilege of conducting activities in this forum and/or are unrelated to the claims here asserted by Netskope. The one remaining allegation—that K.Mizra sent a single notice letter to Netskope—is insufficient to establish specific personal jurisdiction over K.Mizra.

#### i. Most of the alleged contacts fail to establish that K.Mizra has availed itself of California

The first problem with Netskope's allegations of personal jurisdiction is that many of the acts alleged in the Complaint as establishing jurisdiction over K.Mizra do not show that K.Mizra purposefully availed itself of the privilege of conducting activities in this forum.

<u>First</u>, Netskope's allegations concerning out-of-state litigation that resulted in licensing of entities that have some connection to California are insufficient to show that K.Mizra availed itself of this forum. For example, the Complaint identifies various cases allegedly filed against California companies in Texas and Delaware. (Complaint ¶ 29 n. 6-13.) Courts have consistently found that such cases, even if they

resulted in agreements with the California entity, have no bearing on the specific jurisdiction analysis. *See, e.g.*, *Kyocera Int'l, Inc. v. SemCon IP, Inc.*, No. 3:18-CV-1575-CAB-MDD, 2018 U.S. Dist. LEXIS 180135, at *7 (S.D. Cal. Oct. 19, 2018) (finding such enforcement activities "unequivocally tangential and decidedly inadequate" to justify specific jurisdiction); *see also Juniper Networks, Inc. v. SSL Servs.*, No. C 08-5758 SBA, 2009 U.S. Dist. LEXIS 112399, at *12 (N.D. Cal. Nov. 13, 2009) (finding "novel argument" that enforcement action against California resident in Texas court is sufficient to establish jurisdiction does not "make any logical sense").

Second, Netskope's allegation that execution of license agreements with California entities likewise fail to show that K.Mizra availed itself of California. Initially, it should be noted that these allegations are about contracts "with several California companies" and thus do not allege that K.Mizra did anything in California. (Complaint ¶ 29.) Moreover, K.Mizra does not have any *exclusive* license agreements with California companies, nor does it have any ongoing relationship with any of the companies identified in the Complaint. (Hausman Decl. ¶ 9.) Federal Circuit case law establishes that non-exclusive license agreements do not show purposeful availment of a forum. *Breckenridge Pharm.*, 444 F.3d at 1366 (explaining that defendant may not be subject to personal jurisdiction even where it has "successfully licensed the patent in the forum state, even to multiple non-exclusive licensees."). Indeed, the case law even distinguishes between types of exclusive license agreements in this regard. *See New World Int'l, Inc. v. Ford Global Techs., LLC*, 859 F.3d 1032, 1040 (Fed. Cir. 2017) (noting that the mere existence of an exclusive license does not establish specific jurisdiction). But again, K.Mizra has not granted any exclusive license to any entity, and Netskope does not allege otherwise.

Moreover, Netskope appears to be relying on license agreements related to the out-of-state litigations to support the "purposeful availment" prong. For example, the Complaint alleges settlement agreements with "Cisco, Forescout, HP, and

SonicWall." (Complaint ¶ 29). But each of these alleged license agreements corresponds to an out-of-state litigation identified by Netskope. (Complaint ¶ 29 n. 7 (Cisco); n.9 (Forescout)[2]; n.10 (HP), n. 13 (SonicWall).) Licenses to settle out-of-state enforcement actions are part and parcel of the out-of-state litigation and should not be considered to show purposeful availment of this forum. Notably, the identified licenses also do not purport to relate to California through their choice-of-law or forum selection clauses. (Hausman Decl. ¶ 10.) This contradicts Netskope's apparent contention that such licenses demonstrate purposeful availment in California. *NanoeXa Corp. v. Univ. of Chicago*, No. 10-CV-2631-LHK, 2010 U.S. Dist. LEXIS 113409, at *15 (N.D. Cal. Oct. 21, 2010) ("[Defendant] received no benefit, privilege, or protection from California, as the parties agreed to an Illinois choice of law provision in the License Agreement"); *see also Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1069 (5th Cir. 1992) (noting that choice-of-law provision designating English law "indicates rather forcefully that [the defendant] did not purposefully direct its activities towards Texas").

<u>Third</u>, sending license communications to companies located in California does not suffice to establish specific personal jurisdiction over K.Mizra. *See, e.g.*, *Breckenridge Pharm.*, 444 F.3d at 1366 (citing *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1356 (Fed. Cir. 2002)). Indeed, it is merely an extension of the rule for non-exclusive licenses, because all non-exclusive licenses would be preceded by some communications. And again, this appears to be an attempt to end-run the out-of-state connections here. In the Complaint, Netskope alleges communications with Broadcom, Epson America, Forescout, and HP. (Complaint ¶ 29.) But again, each of

---

[2] K.Mizra does not have a license agreement with Forescout. (Hausman Decl. ¶ 13.)

these corresponds to an out-of-state litigation identified by Netskope in the Complaint. (*Id.* at n.11 (Broadcom); n.8 (Epson); n.9 (Forescout); n.10 (HP).)[3]

### ii. Most of the alleged contacts are unrelated to Netskope's claims

It was Netskope's burden to plead sufficient facts tying K.Mizra's alleged contacts with California to its declaratory judgment claim. *See generally Gemini Bioproducts, Inc. v. Serum Source Int'l*, No. 2-17-cv-01551-JAM-KJN, 2017 U.S. Dist. LEXIS 187377, at *7 (E.D. Cal. Nov. 9, 2017) (rejecting general allegations without explanation of how those allegations related to the asserted claims). Netskope failed to do so. For example, Netskope does not even allege that contacts with, for example, Broadcom or Epson, relate to the '705 Patent. *See Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1334 (Fed. Cir. 2008) (requiring that the activities relate to "the relevant patents"). Indeed, even where K.Mizra might have been said to have availed itself of this forum, there is no connection between those activities and Netskope's claims. For example, the Complaint identifies a single case filed by K.Mizra in California. (Complaint ¶ 29.) But that case involved different defendants and different patents. (Hausman Decl. ¶¶ 11-12.) District courts in this venue have recognized that such activities cannot support a finding of specific jurisdiction. *See Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 113 F. Supp. 3d 1027, 1044-45 (N.D. Cal. 2015), *reversed on other grounds*, 848 F.3d 1346 (Fed. Cir. 2017). More broadly, Netskope's claim for declaratory judgment for non-infringement has no relationship with these other California contacts. Thus, even if licensing discussions and/or agreements with others could be considered (and they properly cannot be), their relationship to the claims here is attenuated and they thus deserve little weight in the

---

[3] Notably, Netskope does not allege that the communications were sent to California, only that they were sent to "companies located in California." (Complaint ¶ 29.) This language would seem to capture negotiations between outside counsel related to out-of-state litigations.

analysis. *See Avocent*, 552 F.3d at 1332 (noting that a relevant consideration is the "extent to which the declaratory judgment claim arises out of or relates to" the relevant activities).

### iii. Exercise of jurisdiction over K.Mizra is not reasonable

The "reasonableness" analysis here seems to boil down to whether the sending of a single notice letter to Netskope's California headquarters in March 2025 is a sufficient contact upon which to predicate a finding of specific personal jurisdiction. It is not and circuit courts have uniformly rejected the suggestion that a single notice letter, or even three, is enough to confer specific jurisdiction. *Avocent*, 552 F.3d at 1333 (three letters); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (three letters); *accord. Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1208 (9th Cir. 2006) ("A cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter."). A substantial body of case law from this district also supports rejecting Netskope's attempt to invoke jurisdiction here. *See, e.g., Docusign, Inc. v. Clark*, No. 21-cv-04785-WHO, 2022 U.S. Dist. LEXIS 13680, at *13 (N.D. Cal. Jan. 25, 2022) (one email); *Ondot*, 2018 U.S. Dist. LEXIS 235998, at *3 (minimal communications).

Indeed, even if the other licensing and enforcement activities identified by Netskope were here relevant (and they are not), they would not change the conclusion that it would be unreasonable to exercise personal jurisdiction over K.Mizra in this forum. As explained above, Netskope appears to be relying on negotiations and/or license agreements entered in resolving out-of-state litigation.[4] The location of the defendant in those cases cannot subject a plaintiff to personal jurisdiction when it attempts to—or does—settle a case that is otherwise unrelated to that forum. *Accord.*

---

[4] In addition, although Netskope fails to provide any facts in this regard, it should be noted that most of the out-of-state cases identified by Netskope are several years old, increasing the unreasonableness of hauling K.Mizra into court in this forum now based on those alleged contacts. (Complaint ¶ 29 n. 7 (2020); n. 9-12 (2021).)

*SGI Air Holdings II LLC v. Novartis Int'l, AG*, 192 F. Supp. 2d 1195, 1202 (D. Colo. 2002) ("[A] party does not submit itself to personal jurisdiction in a distant forum simply by entering into a contract with a party that resides in that forum."). Such an approach would disincentivize settlement negotiations and thereby severely hamper the interstate judicial system's interest in obtaining the most efficient resolution of controversies. *See Red Wing*, 148 F.3d at 1361 (noting that policy supporting settlement of infringement claims is relevant to due process analysis in determining whether cease-and-desist letters support personal jurisdiction); *accord. Digi-Tel Holdings v. Proteq Telcoms.*, 89 F.3d 519, 525 (8th Cir. 1996) ("Giving jurisdictional significance to [pre-suit settlement negotiations between the parties] may work against public policy by hindering the settlement of claims"). Any countervailing factors cannot overcome these issues: "Principles of fair play and substantial justice afford a patentee sufficient latitude" to settle a case filed in one forum "without subjecting itself to jurisdiction in a foreign forum." *Red Wing*, 148 F.3d at 1360-61 (addressing notice letters).

The Court simply does not have personal jurisdiction over K.Mizra. Netskope's declaratory judgment Complaint should thus now be dismissed.

## IV. THE COURT SHOULD DECLINE TO EXERCISE SUBJECT MATTER JURISDICTION OVER THE DECLARATORY JUDGMENT CLAIM

### A. Legal Standard

The Declaratory Judgment Act is cast in terms of permissive, rather than mandatory, authority. 28 U.S.C. § 2201(a) (stating that a court "may" declare the rights of any interested party); *see also Hartford Cas. Ins. Co. v. Teed*, No. 18-cv-00479-RS, 2019 U.S. Dist. LEXIS 226600, at *3-4 (N.D. Cal. May 10, 2019). Accordingly, "once jurisdiction is established, courts have discretion whether to entertain an action for a declaratory judgment." *Hartford Cas. Ins.*, 2019 U.S. Dist. LEXIS 226600, at *4. In exercising this discretion, courts "must balance concerns of judicial administration, comity, and fairness to the litigants." *Chamberlain v. Allstate*

*Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991). A key question is "whether hearing the declaratory judgment action would serve the objectives for which the Declaratory Judgment Act was created." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed. Cir. 1996).

> B. **Exercising Jurisdiction Over Netskope's Declaratory Judgment Claim Will Inflict Violence on the Public Policies Underlying the Declaratory Judgment Statute**

The Court should decline to exercise jurisdiction here as doing so would do nothing to address the purpose of the Declaratory Judgment Act in the context of patents: precluding "extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity." *Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1346 (Fed. Cir. 2005). The alleged facts here dispel any suggestion that K.Mizra was engaged in "scare the customer and run" tactics. The Complaint alleges only that K.Mizra sent a single, restful letter offering Netskope the opportunity to engage in commercially reasonable licensing discussions. (Complaint ¶ 29.) Rather than respond to the letter to see what K.Mizra might be thinking or to explain in detail its positions, Netskope chose simply to sue. (Hausman Decl. ¶¶ 7-8.) Another district court in this district has explained why declining jurisdiction in these circumstances is appropriate:

> The Declaratory Judgment Act provides an accused infringer with the right to seek relief where the patentee has "refused to grasp the nettle and sue," leaving the accused infringer with an "*in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of [its] enterprises." *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734 (Fed. Cir. 1988). At the time it filed suit, FUSA was not yet faced with any such dilemma since this was the first communication from Transonic, and there was an outstanding offer to negotiate. There is no evidence

>that Transonic in any way delayed or intended to delay filing suit if an amicable resolution could not be achieved. Exercising jurisdiction over declaratory-relief actions under such circumstances would create a strong disincentive for patentees to communicate with potential infringers before filing suit, for fear of being sued first and thus forced to litigate in the defendant's forum of choice.

*Fresenius USA, Inc. v. Transonic Sys.*, 207 F. Supp. 2d 1009, 1012-13 (N.D. Cal. Aug. 31, 2001); *see also Invue Sec. Prods. v. Merch. Techs., Inc.*, No. 3:12-cv-88-RJC-DSC, 2012 U.S. Dist. LEXIS 92097, at *10 (W.D.N.C. July 3, 2012) ("[T]he Court notes that it is in the public interest to allow parties to resolve matters privately."). On the other hand, accepting jurisdiction here "would promote the premature filing of declaratory judgment actions and reduce the incentive for potential infringers to communicate with patentees before filing suit." *IMPAX Labs., Inc. v. Medicis Pharm. Corp.*, No. C-08-0253 MMC, 2008 U.S. Dist. LEXIS 111789, at *12 (N.D. Cal. Apr. 16, 2008) (refusing jurisdiction); *accord. In re Combustion Equipment Associates, Inc.*, 838 F.2d 35, 37 (2d Cir. 1988) ("[A]ccelerated judicial intervention creates the risk of burdening the courts and the litigants with disputes that were otherwise destined to disappear by themselves.").[5]

The Court should now decline jurisdiction based on public policy and judicial economy considerations that encourage parties to at least attempt to work out these issues before running to the Court.

---

[5] Indeed, prior precedent acknowledged that the mere offer of a patent license did not even raise a controversy sufficient to invoke subject matter jurisdiction for a declaratory judgment claim. *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053 (Fed. Cir. 1995). While *Phillips* may no longer be good law for that point, it more than suggests that the Declaratory Judgment Act was never understood to be a complete substitute for pre-suit licensing negotiations and its objective was not to replace them.

## V. CONCLUSION

Netskope has failed to meet its burden to establish that the Court may here properly exercise personal jurisdiction over K.Mizra. But even if it had, the Court should decline to exercise its discretion, as allowing this case to proceed would inflict violence on the laudable public police of promoting the private resolution of licensing negotiations. Netskope's declaratory judgment action should be dismissed.

Dated: August 1, 2025

Respectfully submitted,

By: /s/ *Michael Flynn-O'Brien*
Robert R. Brunelli
(admitted *pro hac vice*)
Brian S. Boerman
(admitted *pro hac vice*)
SHERIDAN ROSS PC
1560 Broadway, Suite 1200
Denver, CO 80202
Telephone: (303) 863-2961
Facsimile: (303) 863-0223
rbrunelli@sheridanross.com
bboerman@sheridanross.com
litigation@sheridanross.com

Denise M. De Mory (SBN 168076)
Michael Flynn-O'Brien (SBN 291301)
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 351-7248
Facsimile: (415) 426-4744
ddemory@bdiplaw.com
mflynnobrien@bdiplaw.com

*Attorneys for Defendant K.Mizra LLC*