1   Thomas N. Millikan, Bar No. 234430
    TMillikan@perkinscoie.com
2   Joseph P. Reid, Bar No. 211082
    JReid@perkinscoie.com
3   PERKINS COIE  LLP
    11452 El Camino Real, Suite 300
4   San Diego, CA  92130
    Telephone:  858.720.5700
5   Facsimile:  858.720.5799

6   Andrew N. Klein, Bar No. 300221
    AKlein@perkinscoie.com
7   PERKINS COIE LLP
    3150 Porter Drive
8   Palo Alto, CA  94304-1212
    Telephone:  650.838.4300
9   Facsimile:  650.838.4350

10  *Attorneys for Plaintiff*
    Netskope, Inc.

11

12                  **UNITED STATES DISTRICT COURT**

13               **NORTHERN DISTRICT OF CALIFORNIA**

14

15  NETSKOPE, INC.,                          Case No. 3:25-cv-04833-RS

16                      Plaintiff,           **PLAINTIFF NETSKOPE, INC.'S**
                                             **OPPOSITION TO DEFENDANT**
17          v.                               **K.MIZRA'S MOTION TO DISMISS**

18  K.MIZRA LLC,                             Date:      September 11, 2025
                                             Time:      1:30 pm
19                      Defendant.           Location  San Francisco Courthouse
                                                       Courtroom 3, 17th Floor
20                                           Judge:     Judge Richard Seeborg

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................... 1

II.   BACKGROUND ................................................................................................ 2

III.  LEGAL STANDARDS ...................................................................................... 4

      A.    Motions to Dismiss for Lack of Personal Jurisdiction ........................... 4

      B.    Declining Declaratory Judgement Actions on the Basis of Discretion ................. 5

IV.   ARGUMENT .................................................................................................... 6

      A.    Binding Federal Circuit Precedent Necessitates Denial of K.Mizra's
            Motion. ................................................................................................. 6

            1.    Under *Trimble*, K.Mizra Has "Purposefully Directed" Itself to
                  California, Satisfying the First Two Personal Jurisdiction Factors
                  and Establishing Netskope's *Prima Facie* Case. ......................... 6

            2.    K.Mizra Deliberately Argues Under Pre-*Trimble* Cases to Avoid
                  the Appropriate Standard of "Purposeful Direction." ....................... 9

            3.    K. Mizra Cannot Present a "Compelling Case" that Personal
                  Jurisdiction Would Be Unfair and Unreasonable in Light of Its
                  Targeting of Netskope and its Repeated Attacks Against California
                  Companies. .............................................................................. 9

      B.    Alternatively, Netskope Should Be Allowed Discovery Into K.Mizra's
            California Activities Relevant to Personal Jurisdiction. ......................... 12

      C.    No Sound Basis Exists to Decline Subject Matter Jurisdiction Over
            Netskope's Declaratory Judgment Action. ........................................... 13

V.    CONCLUSION ................................................................................................ 17

1

**TABLE OF AUTHORITIES**

2

CASES

3

*Arris Grp., Inc. v. British Telecomms. PLC,*
   639 F.3d 1368 (Fed. Cir. 2011) ............................................................................. 14

4

*Burger King Corp. v. Rudzewicz,*

5
   471 U.S. 462 (1985) ................................................................................. passim

6

*Capo, Inc. v. Dioptics Med. Prods., Inc.,*

7
   387 F.3d 1352 (Fed. Cir. 2004) ............................................................... passim

8

*Elecs. For Imaging, Inc. v. Coyle,*
   340 F.3d 1344 (Fed. Cir. 2003) .............................................................. 5, 8, 16

9

*EMC Corp. v. Norand Corp.,*

10
   89 F.3d. 807 (Fed. Cir. 1996) .................................................................... 15, 16

11

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,*

12
   592 U.S. 351 (2021) ...................................................................................... 6

13

*Fresenius USA, Inc. v. Transonic Sys.,*
   207 F. Supp. 2d 1009 (N.D. Cal. 2001) ............................................... 14, 15

14

*Impax Labs., Inc. v. Medicis Pharm. Corp.,*

15
   No. C-08-0253, 2008 WL 1767044 (N.D. Cal. Apr. 16, 2008) ................... 14, 15

16

*In re Combustion Equipment Associates, Inc.,*
   838 F.2d 35 (2d Cir. 1988) ........................................................................ 14, 15

17

*Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC,*

18
   910 F.3d 1199 (Fed. Cir. 2018) ............................................................. 6, 7, 9

19

*Juniper Networks, Inc. v. Swarm Tech. LLC,*

20
   No. 20-cv-3137, 2021 WL 6049924 (N.D. Cal. Dec. 21, 2021) .................... 4, 7

21

*Laub v. U.S. Dep't of Interior,*
   342 F.3d 1080 (9th Cir. 2003) .................................................................. 12

22

*Lyft, Inc. v. AGIS Software Dev. LLC,*

23
   No. 21-cv-04653, 2022 WL 267409 (N.D. Cal. Jan. 28, 2022) ................... 12, 13

24

*Lyft, Inc. v. Quartz Auto Techs. LLC,*

25
   No. 21-cv-01871, 2021 WL 6618867 (N.D. Cal. Sept. 7, 2021) ........................ 7

26

*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007) ..................................................................................... 14

27

*Mitan v. Feeney,*

28
   497 F. Supp. 2d 1113 (C.D. Cal. 2007) ..................................................... 12

*Plantronics, Inc. v. Callpod, Inc.*,
No. 14-cv-04639, 2015 WL 293412 (N.D. Cal. Jan. 21, 2015)................................................ 16

*PopSockets LLC v. Flygrip, Inc.*,
No. 21-cv-02900, 2022 WL 17547954 (D. Colo. Oct. 27, 2022) .......................................... 7

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
148 F.3d 1355 (Fed. Cir. 1998)........................................................................................ passim

*Ross v. Abbott Vascular Inc.*,
No. 19-cv-3794, 2020 WL 4934487 (N.D. Cal. Apr. 6, 2020) ....................................... 12, 13

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
580 U.S. 328 (2017)......................................................................................................... 10

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004).............................................................................................. 4

*Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*,
497 F.3d 1271 (Fed. Cir. 2007)........................................................................................ 15

*Trimble Inc. v. PerDiemCo LLC*,
997 F.3d 1147 (Fed.Circ.2021) ................................................................................... passim

*Twitter, Inc. v. VoIP-Pal.com, Inc.*,
No. 3:21-09773, 2022 WL 2905065 (N.D. Cal. July 22, 2022) ........................................ 4

*Xilinx, Inc. v. Papst Licensing GmBH & Co. KG*,
848 F.3d 1346 (Fed. Cir. 2017)..................................................................................... 5, 11

**STATUTES**

28 U.S.C. § 2201 ................................................................................................................ 5

Declaratory Judgment Act................................................................................................. 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(2)...................................................................................................... 5

## I.    INTRODUCTION

This Court should deny K. Mizra's motion to dismiss, both because (1) this Court has specific jurisdiction over K. Mizra, and (2) this Court would abuse its discretion by declining to hear Netskope's declaratory judgment claim. K.Mizra's only responses to these straightforward conclusions rely on outdated law and irrelevant factual assertions that should be rejected.

On personal jurisdiction, K.Mizra's enforcement letter sent to Netskope's Santa Clara headquarters—expressly alleging that Netskope infringed U.S. Patent No. 8,234,705, calling Netskope a "defendant," and demanding that "Netskope, Inc.'s activities [] need to be regularized"—constitutes "purposeful direction" of activity at this forum under binding Federal Circuit precedent. As such, this Court has personal jurisdiction over K.Mizra unless K.Mizra can demonstrate a "compelling case" that such jurisdiction would be unfair and unreasonable.  But K.Mizra cannot satisfy this heightened standard. It concedes, as it must, that as a monetizing non-practicing entity, it regularly sues companies for patent infringement far from its state of incorporation and its principal place of business, including in California. Indeed, K.Mizra has repeatedly undertaken licensing and enforcement actions in California against California companies, giving California a substantial interest in adjudicating this case.  Personal jurisdiction over K.Mizra in California is therefore *prima facie* reasonable.

Additionally, this Court exercising subject matter jurisdiction over Netskope's declaratory judgment claim is no abuse of discretion. To argue otherwise, K.Mizra focuses on court decisions where the declaratory judgment plaintiff sued to gain leverage in pre-existing negotiations. Not only are those decisions inapposite to the facts here, where no negotiations were underway, the cases K.Mizra cites must yield to the Federal Circuit's holding in *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004) that "when there has been a direct charge of infringement by the patentee, and an actual controversy exists due to ongoing activity that has been accused of infringement, the accused infringer has the right to resolve the dispute." K.Mizra's letter to Netskope was a direct charge of infringement; and K. Mizra does not—and cannot—dispute that there is an actual controversy here. Accordingly, declining to hear Netskope's declaratory judgment claim as K.Mizra suggests would be an abuse of discretion, not the other way around.

Given that both of K.Mizra's arguments fail, this Court should deny the motion to dismiss and allow Netskope's declaratory judgment action to proceed. Alternatively, at an absolute minimum, the Court should allow Netskope discovery into K.Mizra's connections to California to further inform the Court about the merits of K.Mizra's arguments.

## II.    BACKGROUND

Netskope was founded in 2012 in Palo Alto, California. Decl. of Thomas N. Millikan ("Millikan Decl."), ¶ 2. Since its founding, Netskope has been an innovator in cloud security services, and has been headquartered in the Bay Area. ECF 1, ¶¶ 10, 25 (Santa Clara principal place of business). Netskope was founded because conventional network security devices at the time (*e.g.*, firewalls) had become antiquated, and so Netskope worked to develop a comprehensive, homegrown security platform for businesses as they migrated operations to the cloud. *Id.*, ¶¶ 11, 12.

Netskope released its first product in 2013 and has continued to innovate ever since. Netskope's numerous innovations have been recognized both by its large and growing customer base—over 2,400 organizations, including more than 25 of the Fortune 100—and by the industry at large. *Id.*, ¶¶ 14–16. Netskope has received dozens of awards for its innovative cloud security products, including several awards for "Product of the Year." *Id.*, ¶ 16; *see also* Netskope Recognition, Awards, and Affiliations, https://www.netskope.com/company/recognition-awards-affiliations (last visited Aug. 8, 2025).

Conversely, K.Mizra is a non-practicing entity that aggressively monetizes patents by suing companies and forcing licenses. *See* Ex. 1 (K.Mizra.com, Who we are).[1] K.Mizra was founded in June of 2019, acquired patents shortly thereafter, and then commenced filing numerous lawsuits. *See, e.g.*, Ex. 2 (Del. Sec. of State Entity Search Record), Ex. 3 (patent assignment record for '705 patent), Ex. 4 (K.Mizra case list). K.Mizra has filed nearly two dozen cases since 2020. Ex. 4. While K.Mizra is incorporated in Delaware and asserts it has its principal place of business in Florida, ECF 17 at 1, K.Mizra has filed patent infringement lawsuits in California, Georgia, Illinois,

---

[1] All exhibits are exhibits to the Millikan Declaration.

Tennessee, and more than a dozen suits in the Eastern and Western Districts of Texas. Ex. 4. Moreover, K.Mizra's founder lived in California *for nearly two decades* before moving to Florida in July 2019, and it appears he set up K.Mizra *while in California. Compare* Ex. 5 (Hausman LinkedIn profile) (showing Mr. Hausman lived in California until July 2019), *with* Ex. 6 (Hausman IAM 300 Profile) ("Chuck Hausman is the CEO of K.Mizra, which he founded in 2019."), *with* Ex. 2 ("Incorporation Date / Formation Date: 6/17/2019.").

Over the last several years, K.Mizra has filed a dozen lawsuits against major cloud and security technology companies alleging infringement of the '705 patent. In March of 2025, K.Mizra turned its sights on Netskope, sending a letter to Netskope's Santa Clara headquarters that demanded Netskope take a license. Ex. 7. The letter was sent by K.Mizra's litigation counsel at Sheridan Ross, *compare* Ex. 4 (listing Robert Brunelli as K.Mizra's litigation counsel) *with* Ex. 7 at 1, 3 *and* Millikan Decl., ¶ 10, and while artfully worded, the letter's infringement allegation and licensing demand were explicit and undeniable: "As can be seen through review of the attached Notice of Technology Use chart [], the Involved Product [NetskopeOne Zero Trust Access] *meets all the limitations of several of the '705 Patent's claims*. Netskope, Inc.'s activities now *need to regularized*." Ex. 7 at 2 (emphasis added). The letter also included a twenty-page "Notice of Technology Use chart" that took an expressly adversarial stance, stating the chart was "vs." Netskope and calling Netskope "Defendant." *Id.* at 43-44.

K.Mizra's California patent-enforcement activities have not been limited just to Netskope. On information and belief, K.Mizra has regularly threatened California companies with infringement of its patents, including the '705 patent. ECF ¶ 29. Indeed, on information and belief, K.Mizra has sent pre-suit enforcement letters to at least the following California companies: Aruba Networks, Broadcom, Cisco, Epson America, Forescout Technologies, Fortinet, Google, Hewlett Packard Enterprise, and SonicWall. *See, e.g.*, ECF 1, ¶ 29; *K.Mizra LLC v. Hewlett Packard Enter. Co.*, No. 2:21-cv-00305 (E.D. Tex.), ECF 1, ¶ 10 ("In early 2021, K.Mizra sent letters to HPE and Aruba inviting them to discuss their products' infringement of K.Mizra's patents [including the '705 patent ] … ."); *K.Mizra LLC v. Epson Am., Inc.*, No. 8:25-cv-00027 (C.D. Cal.), ECF 1, ¶¶ 9, 38 (Epson America has California principal place of business, and K.Mizra sent infringement

1  notice to Epson via email in July 2021); *K.Mizra LLC v. Forescout Techs. Inc.*, No. 2:21-cv-00248

2  (E.D. Tex.), ECF 1, ¶ 5 ("Defendant Forescout is a California Corporation … ."), ¶ 8 ("K.Mizra []

3  sent three letters to Forescout in January, February, and March 2021. … K.Mizra's February10

4  letter also conveyed a preliminary claim chart demonstrating Forescout's infringement of the '705

5  patent."); *K.Mizra LLC v. Fortinet, Inc.*, No. 2:21-cv-00249 (E.D. Tex.), ECF 1, ¶ 8 ("K.Mizra sent

6  letters [regarding the '705 patent] to Fortinet in January 2021 and then again in February 2021 … .");

7  Ex. 8 (Fortinet was "[f]ounded in the San Francisco Bay Area in 2000"). And as noted above,

8  K.Mizra filed suit against Epson America in the Central District of California.

9      Because K.Mizra has expressly asserted that Netskope infringed the '705 patent, and

10  because "K.Mizra has been particularly aggressive in suing innovators" on that patent, ECF 1,

11  ¶¶ 2–8, 17–23, 29, Netskope promptly filed this declaratory judgment action to clear its business

12  of K.Mizra's baseless infringement charge. No negotiations between K.Mizra and Netskope had

13  occurred or were ongoing when Netskope filed this action. Millikan Decl., ¶ 12.

14  **III.    LEGAL STANDARDS**

15      **A.    Motions to Dismiss for Lack of Personal Jurisdiction**

16      Personal jurisdiction in patent declaratory judgment actions is governed by Federal Circuit

17  law. *Twitter, Inc. v. VoIP-Pal.com, Inc.*, No. 3:21-09773, 2022 WL 2905065 (N.D. Cal. July 22,

18  2022) (citing *Juniper Networks, Inc. v. Swarm Tech. LLC*, No. 20-cv-3137, 2021 WL 6049924, at

19  *1 (N.D. Cal. Dec. 21, 2021); *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1152 (Fed. Cir.

20  2021)). California's long-arm statute is coextensive with the limits of due process, so the only

21  inquiry to determine if personal jurisdiction is proper is "whether jurisdiction comports with due

22  process." *Twitter*, 2022 WL 2905065, at *1 (citations omitted). That due process analysis turns on

23  three factors: "(1) whether the defendant 'purposefully directed' its activities at residents of the

24  forum[2]; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum;

25

26  ――――――――――――――――

27  [2] The Federal Circuit treats "purposeful direction" as one way to meet the "purposeful availment" test, while the Ninth Circuit treats "purposeful direction" and "purposeful availment" as distinct ways to satisfy the sufficient minimum contacts inquiry. *Compare Trimble*, 997 F.3d at 1156–57, *with Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

28

and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Xilinx, Inc. v. Papst Licensing GmBH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (citation omitted).

On a motion to dismiss under Fed. R. Civ. P. 12(b)(2), "a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Elecs. For Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1349 (Fed. Cir. 2003). A plaintiff need only make a "prima facie" showing that a defendant is subject to personal jurisdiction to defeat a motion to dismiss, where the claim of personal jurisdiction "is based on affidavits and other written materials in the absence of an evidentiary hearing." *Id.* If the plaintiff makes this showing, the burden shifts to the defendant to make a "compelling case" that exercising jurisdiction would be unfair and unreasonable. *Trimble*, 997 F.3d at 1153 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). When evaluating fairness/reasonableness, the Court considers the five *Burger King* factors: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *See Burger King*, 471 U.S. at 477 (1985); *Trimble*, 997 F.3d at 1158–59.

## B.     Declining Declaratory Judgement Actions on the Basis of Discretion

Under the Declaratory Judgment Act, "any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The purpose of Declaratory Judgement Act is "to allow a party 'who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side.'" *Capo*, 387 F.3d at 1354 (citation omitted). When the objectives of the Declaratory Judgment Act are served, "dismissal [of an action] is rarely proper." *Id.* at 1355.

Although the district court retains appropriate discretion to decline to accept a declaratory judgment action, "[t]here must be well-founded reasons" to do so. *Id.* (citation omitted). Absent well-founded reasons, "precedent establishes that when there has been a direct charge of infringement by the patentee, and an actual controversy exists due to ongoing activity that has been

1   accused of infringement, the accused infringer has the right to resolve the dispute." *Id.* (citation

2   omitted).

3   **IV.    ARGUMENT**

4       **A.    Binding Federal Circuit Precedent Necessitates Denial of K.Mizra's Motion.**

5           **1.    Under *Trimble*, K.Mizra Has "Purposefully Directed" Itself to
            California, Satisfying the First Two Personal Jurisdiction Factors and
6           Establishing Netskope's *Prima Facie* Case.**

7       The Federal Circuit's latest word on the minimum contacts necessary to establish personal

8   jurisdiction came nearly five years ago in *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147 (Fed. Cir.

9   2021). Under that binding authority, K.Mizra's motion should be denied.

10      As the Federal Circuit explained in *Trimble*, sending patent demand letters to a forum was

11  long considered insufficient to establish jurisdiction under *Red Wing Shoe Co. v. Hockerson-*

12  *Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998). *Trimble*, 997 F.3d at 1153-54. However, three

13  developments changed the landscape sufficiently and compelled the Federal Circuit to revisit the

14  issue and "clarify[] the scope" of *Red Wing*. *Id.* at 1154. First, the Supreme Court had noted in

15  several instances that patent law was to be governed by the same procedural rules as other civil

16  litigation, necessitating that personal jurisdiction not receive any patent-specific treatment under

17  *Red Wing*. *Id.* at 1154-55. Second, the Supreme Court had clarified that communications sent into

18  a state *could* create specific personal jurisdiction. *Id.* at 1155. That decision, in turn, had yielded

19  several Federal Circuit cases in which communications threatening suit or proposing settlement or

20  patent licenses were held to be sufficient to establish personal jurisdiction. *Id.* For example, in *Jack*

21  *Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*, 910 F.3d 1199, 1204 (Fed. Cir. 2018), the

22  patent assertion entity sent a single licensing letter to several allegedly-infringing banks. *Id.* The

23  Federal Circuit deemed such activity purposeful direction at the forum for the banks' declaratory

24  judgment claim for non-infringement of identified patents. Finally, the Supreme Court had

25  established that a broad set of contacts with a forum are relevant to the minimum contacts analysis.

26  *Id.* at 1156 (discussing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021)

27  (concluding Montana and Minnesota courts could exercise personal jurisdiction over Ford for

28  accidents involving vehicles in their states despite the vehicles themselves not having been sold in

either state)). Taking all these changes together, the *Trimble* court held that "there is no general rule that demand letters can never create specific personal jurisdiction." *Id.* at 1156. Moreover, the court concluded that "[t]he central question under *Red Wing* is now whether a defendant's connection to a forum is sufficient to satisfy the minimum contacts or purposeful availment test and…whether the exercise of jurisdiction conforms to the due process and fairness criteria of precedent." *Id.*

District court decisions following *Trimble* and *Jack Henry* have continued to find that patent enforcement letter(s) constitute purposeful direction related to declaratory judgment claims. *See, e.g.*, *PopSockets LLC v. Flygrip, Inc.*, No. 21-cv-02900, 2022 WL 17547954, at *7 (D. Colo. Oct. 27, 2022) ("Federal Circuit precedent dictates that [enforcement] letters such as these sent to the forum are sufficient to satisfy the first two *Inamed* factors and thereby establish the defendant's minimum contacts with the forum."); *Juniper*, 2021 WL 6049924, at *2 ("In the declaratory judgment context, warning letters satisfy the requirement of minimum contacts … ."); *Lyft, Inc. v. Quartz Auto Techs. LLC*, No. 21-cv-01871, 2021 WL 6618867, at *1, 2 (N.D. Cal. Sept. 7, 2021) (Quartz's two emails and several phone calls to Lyft's counsel in California discussing patents at issue constituted activity "purposefully [] directed [] at forum residents").

Here, K.Mizra sent its enforcement letter to Netskope's Santa Clara headquarters. That letter expressly asserted that Netskope infringed claims of the '705 patent, that Netskope's conduct "need[ed] to be regularized" (*i.e.*, that Netskope would be sued if it did not take a license from K.Mizra), and even called Netskope a "defendant." Ex. 7 at 2, 44. As such, this letter is substantively indistinguishable from the *Jack Henry* letter held to be purposefully directed activity. 910 F.3d at 1202 (Plano Encryption's letter to American National Bank of Texas identified that the bank allegedly infringed three patents and invited the bank to a take a license to Plano Encryption's patent portfolio).

K.Mizra's enforcement letter to Netskope does not stand alone. As Netskope pleaded and has demonstrated herein, K.Mizra routinely sends enforcement letters into California, including with respect to the very same '705 patent it is asserting against Netskope. *See supra* at pp. 3–4. Indeed, K.Mizra has sent enforcement letters regarding the '705 patent into California for at least

Aruba Networks, Forescout, Fortinet, and Hewlett Packard Enterprise. This undermines K.Mizra's assertion that its other activities directed at California are "irrelevant." Moreover, while K.Mizra complains that Netskope did not actually allege that any of these enforcement letters were sent into California, ECF 17 at 8 n.3, Netskope has more particularly demonstrated this here. *See supra* at pp. 3–4.[3] And, even if these letters were not sent into California, *Trimble* held that repeatedly targeting business activities in a forum is relevant to the personal jurisdiction analysis and further establishes sufficient minimum contacts with that forum. 997 F.3d at 1155–56 ("[W]e have identified other contacts relevant to the purposeful availment inquiry in declaratory judgment patent cases. These contacts include … 'extra-judicial patent enforcement' targeting business activities in the forum state." (citation omitted)).

Accordingly, under the most recent and binding authority from the Federal Circuit, Netskope has met its *prima facie* burden to demonstrate the first two prongs of the personal jurisdiction analysis: (i) purposeful direction of activity into California (ii) that arises out of or relates to Netskope's declaratory judgment claim for non-infringement of the '705 patent.[4]

---

[3] To the extent, K.Mizra contests the letters were sent into California, the Court must resolve any factual conflicts in Netskope's favor. *Coyle,* 340 F.3d at 1349.

[4] K.Mizra may argue in reply that *Red Wing* should control because of the Federal Circuit's statement in *Trimble* that "*Red Wing* remains correctly decided with respect to the limited number of communications involved in that case." 997 F.3d at 1156. That would be a mistaken argument.

In *Red Wing*, the Federal Circuit acknowledged that "even a single contact with a forum state may suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim," and the Federal Circuit appeared to accept that the communications at issue there were sufficient to establish minimum contacts related to Red Wing's declaratory judgment claims. 148 F.3d at 1358, 1359-60. The Federal Circuit also acknowledged that Red Wing's claims served "the central purpose" of the Declaratory Judgment Act because they were intended "to clear the air of infringement charges." *See id.* at 1360. Because of this, *Red Wing* did not ground its ultimate holding in the "sufficient minimum contacts" prong of the personal jurisdiction inquiry, but rather in the fairness and reasonableness prong. *See id.* ("A better explanation for this court's statement that cease-and-desist letters alone do not suffice to create personal jurisdiction lies in the second prong of the traditional Due Process inquiry. This prong examines whether the maintenance of personal jurisdiction would 'comport with "fair play and substantial justice."'").

As to the fairness and reasonableness prong, *Red Wing* and this case are nothing alike. Unlike in *Red Wing*, Netskope has assessed the *Burger King* factors and has shown that exercising personal jurisdiction over K.Mizra in this forum is fair and reasonable, including because K.Mizra has repeatedly targeted California businesses as part of its patent enforcement activities, including specifically with respect to the '705 patent. No assessment of the *Burger King* factors was undertaken in *Red Wing*, and there were no other relevant contacts with the forum outside of party-communications. *Id.* at 1352 ("In sum, either the activities of HHI are not directed at Minnesota or the activities focused on are not those of HHI."). Further, *Red Wing*'s assessment of fairness and reasonableness appeared to be based in large part on patent policy considerations that *Trimble* held

---

### 2.    K.Mizra Deliberately Argues Under Pre-*Trimble* Cases to Avoid the Appropriate Standard of "Purposeful Direction."

K.Mizra's motion pretends the *Trimble* decision never happened. Indeed, the word "Trimble" does not even appear in its motion. That conspicuous omission is telling. Instead of addressing the current state of the law, K.Mizra cites *Red Wing* in an effort to suggest that the law has not changed. *See, e.g.*, Mot. at 9 (citing *Red Wing* and 2006 *Yahoo!* case to suggest that "[a] cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter."). Indeed, all the cases K.Mizra cites in support of its minimum contacts argument were decided *before* both *Trimble* and *Jack Henry*. *Id.* at 5-9.

Once this Court applies the proper test, it should find that Netskope has *prima facie* satisfied the first two prongs of the personal jurisdiction analysis. That reduces the jurisdictional inquiry to one remaining question—fairness and reasonableness—which again favors Netskope, as discussed below.

### 3.    K. Mizra Cannot Present a "Compelling Case" that Personal Jurisdiction Would Be Unfair and Unreasonable in Light of Its Targeting of Netskope and its Repeated Attacks Against California Companies.

Because Netskope has *prima facie* established the first two prongs of personal jurisdiction, the burden shifts to K.Mizra to "present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable." *Trimble*, 997 F.3d at 1153 (emphasis in original). The Court considers five factors in making this determination: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *See Trimble*, 997 F.3d at 1158–59 (citing *Burger King*, 471 U.S. at 477 (1985)).

While K.Mizra cites *Burger King* once in passing—one more citation than it gives *Trimble*—K.Mizra never bothers to apply the *Burger King* factors. Instead, K.Mizra argues that

---

were "not consistent with [later] Supreme Court decisions." 997 F.3d at 1154. *Red Wing* is thus distinguishable and does not apply here.

exercising jurisdiction would be unfair because it would "disincentivize [patent infringement] settlement negotiations and thereby severely hamper the interstate judicial system's interest in obtaining the most efficient resolution of controversies." Mot. at 10. Again, this approach requires reliance on *Red Wing*, but it was *Red Wing*'s reliance on "the policy favoring settlement" of patent-infringement cases that *Trimble* held had been abrogated by the Supreme Court:

> Supreme Court cases following *Red Wing* have made clear that the analysis of personal jurisdiction cannot rest on special patent policies. To the extent that *Red Wing* and other cases have suggested otherwise, that language is not consistent with these Supreme Court cases. In cases after *Red Wing*, the Court has emphasized that "[p]atent law is governed by the same ... procedural rules as other areas of civil litigation."

*Trimble*, 997 F.3d at 1154 (quoting *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 340 (2017)).

A straightforward application of the *Burger King* factors demonstrates K.Mizra cannot meet its burden to show a compelling case that the exercise of jurisdiction in this forum would be unfair and unreasonable. Accordingly, the Court should deny K.Mizra's motion to dismiss.

### Lack of Burden on K.Mizra

The primary concern regarding this factor is "burden on the defendant." *Trimble*, 997 F.3d 1157–58 (citation omitted). Because K. Mizra is a patent monetizing entity that has repeatedly targeted business activities in California, *see supra* at pp. 3–4, 7–8, and that routinely litigates in forums far from its state of incorporation and its principal place of business—including in *California*, Ex. 4 (Epson suit)—K.Mizra cannot credibly argue that it would be burdened by litigating in this forum as opposed to another. *Trimble*, 997 F.3d at 1158 ("[T]he nature of PerDiemCo's primary business of asserting its patents requires it to litigate far from Mr. Babayi's [PerDiemCo's sole employee's] Washington office, thus mitigating any burden on it as the defendant."). This factor thus demonstrates that exercising jurisdiction would be fair and reasonable.

### California's Strong Interest in Adjudicating Dispute

Netskope resides in this district, "California has 'definite and well-defined interests in commerce and scientific development,' and 'California has a substantial interest in protecting its

residents from unwarranted claims of patent infringement.'" *Id.* (citation omitted). As such, "[t]he Northern District of California has a significant interest in adjudicating this dispute." *Id.*

### Netskope's Interest in Obtaining Convenient and Effective Relief

California is Netskope's principal place of business and where many of its most knowledgeable employees and relevant documents are located. Millikan Decl., ¶13. Thus, Netskope "indisputably has an interest in protecting itself from patent infringement by obtaining relief 'from a nearby federal court' in its home forum." *Trimble*, 997 F.3d 1147, 1158 (citing *Xilinx*, 848 F.3d at 1356). This factor also demonstrates that exercising jurisdiction would be fair and reasonable.

### Interstate Judicial System's In Obtaining Efficient Resolution of Controversy

Jurisdiction over Netskope's claim in California "would result in an efficient resolution of the controversy," and so "[t]he interstate judicial system's interest in obtaining the most efficient resolution of controversies [] does not counsel against jurisdiction." *Trimble*, 997 F.3d at 1159. K.Mizra may argue settlement would be more efficient, but that does not tilt this factor against exercising jurisdiction. As the Federal Circuit has noted: "there is nothing preventing the parties from reaching a settlement while this case is pending in the Northern District of California." *Id.*

### Shared Interest of the States

There is no "conflict between the interests of California and any other state, because 'the same body of federal patent law would govern the patent [non]infringement claim irrespective of the forum.'" *Id.* (quoting *Xilinx*, 848 F.3d at 1356). Accordingly, this factor also demonstrates that exercising jurisdiction would be fair and reasonable.

*********************

Because at least four of the five relevant factors weigh in favor of exercising jurisdiction, and no factor weighs against it, K. Mizra cannot demonstrate "a compelling case that the presence of some other considerations [] render[s] jurisdiction unreasonable." *Trimble*, 997 F.3d at 1159 (quoting *Burger King*, 471 U.S. at 477).

### B.    Alternatively, Netskope Should Be Allowed Discovery Into K.Mizra's California Activities Relevant to Personal Jurisdiction.

Netskope has *prima facie* established that the Court has personal jurisdiction over K.Mizra as to Netskope's claim for declaratory judgment of non-infringement. To the extent the Court is not convinced that it can exercise personal jurisdiction over K.Mizra, Netskope respectfully requests that K.Mizra's motion be continued 60 days to allow limited jurisdictional discovery to further develop the factual record. Such jurisdictional discovery would consist of five interrogatories, requests for production, and one four-hour Rule 30(b)(6) deposition seeking information on K.Mizra's contacts with this forum, including with respect to K.Mizra's extrajudicial patent enforcement activities directed at California residents.

The Court has broad discretion to permit jurisdictional discovery, and such discovery should be granted when "the jurisdictional facts are contested or more facts are needed." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Courts in the Northern District have repeatedly held that "a plaintiff need not make out a *prima facie* case of personal jurisdiction before it can obtain jurisdictional discovery" but merely needs to present a "'colorable basis' for jurisdiction." *E.g.*, *Ross v. Abbott Vascular Inc.*, No. 19-cv-3794, 2020 WL 4934487, at *7 (N.D. Cal. Apr. 6, 2020) (citations omitted); *Lyft, Inc. v. AGIS Software Dev. LLC*, No. 21-cv-04653, 2022 WL 267409, at *5 (N.D. Cal. Jan. 28, 2022). A colorable basis "should be understood as something less than a *prima facie* showing, and could be equated as requiring the plaintiff to come forward with 'some evidence' tending to establish personal jurisdiction over the defendant." *AGIS*, 2022 WL 267409, at *5 (citing *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007)).

While Netskope contends it has more than *prima facie* established that personal jurisdiction over K. Mizra is proper here, at the very least Netskope has established a "colorable basis" for exercising personal jurisdiction. K.Mizra's March 2025 enforcement letter to Netskope was purposefully directed at Netskope's Santa Clara headquarters, and Netskope has identified that K.Mizra has sent numerous pre-suit enforcement letters to numerous California companies regarding the '705 patent. *See supra* at pp. 3–4 (citations omitted). K.Mizra has likely sent such letters to other companies in California as well. Netskope has also identified that K.Mizra has

entered licenses with several California companies after suing them. ECF 1 ¶ 29 (K.Mizra has "license agreements with several California companies, including Cisco, Forescout, HP, and SonicWall."); *see also* ECF 17 at 6–7 (conceding licenses with Cisco, HP and SonicWall). As the Federal Circuit held in *Trimble*, "'extra-judicial patent enforcement' [that targets] business activities in the forum state" is relevant to the personal jurisdiction analysis. 997 F.3d at 1155–56.

Accordingly, if the Court has doubts about its jurisdiction over K.Mizra, the Court should permit Netskope to take jurisdictional discovery into K.Mizra's contacts with California. *See e.g.*, *Ross*, 2020 WL 4934487, at *7 (finding plaintiffs presented some evidence establishing a colorable basis for personal jurisdiction and granting jurisdictional discovery); *Lyft, Inc. v. AGIS Software Dev. LLC*, No. 21-cv-04653, 2022 WL 267409, at *6 (N.D. Cal. Jan. 28, 2022) ("Regarding Lyft's claim that AGIS Software is an alter ego of AGIS, Inc. and AGIS Holdings, the Court finds that Lyft has presented sufficient facts to justify jurisdictional discovery. … Accordingly, the Court GRANTS Lyft leave to pursue jurisdictional discovery regarding the relationship between AGIS Software, AGIS, Inc., and AGIS Holdings and their contacts with California.").

### C.    No Sound Basis Exists to Decline Subject Matter Jurisdiction Over Netskope's Declaratory Judgment Action.

No "well-founded reasons" exist to refuse hearing Netskope's declaratory judgment action for non-infringement of the '705 patent. *Capo*, 387 F.3d at 1355. Absent such reasons, Netskope "has the right to resolve this dispute"—K.Mizra's March 2025 letter was a direct charge of infringement by Netskope of the '705 patent, and an actual controversy as to that patent exists between the parties, which K.Mizra does not deny. *Compare id.* ("Absent [well-founded] reasons, precedent establishes that when there has been a direct charge of infringement by the patentee, and an actual controversy exists due to ongoing activity that has been accused of infringement, the accused infringer has the right to resolve the dispute."), *with* Ex. 7 at 2 ("As can be seen through review of the attached Notice of Technology Use chart [], the Involved Product [NetskopeOne Zero Trust Access] meets all the limitations of several of the '705 Patent's claims. Netskope Inc's activities now need to be regularized….").

K.Mizra offers no basis to decline jurisdiction, only case citations that are inapposite. ECF 17 at 11–12 (citing *Fresenius USA, Inc. v. Transonic Sys.*, 207 F. Supp. 2d 1009 (N.D. Cal. 2001); *Impax Labs., Inc. v. Medicis Pharm. Corp.*, No. C-08-0253, 2008 WL 1767044 (N.D. Cal. Apr. 16, 2008); *In re Combustion Equip. Assocs., Inc.* , 838 F.2d 35 (2d Cir. 1988) [hereinafter *CEA*]).

*Fresenius* is irrelevant because it dealt with whether there was a "reasonable apprehension" of a suit, *i.e.*, whether an "actual controversy" existed between the parties, based on a letter by the defendant-patentee merely suggesting the declaratory-judgment plaintiff "may be using" an allegedly infringing product. 207 F. Supp. 3d at 1010. Thus, the *Fresenius* court's dicta that it would have declined to hear the declaratory judgment action as a matter of discretion was based on a letter that did not directly charge the declaratory-judgment plaintiff with infringement. *Id.* at 1012–13. Moreover, *Fresenius* could not have taken into account the Federal Circuit's decision in *Capo* because it preceded *Capo* by three years, rendering *Fresenius* further inapplicable.[5]

*Impax* is likewise irrelevant. There, the declaratory judgment plaintiff filed a non-infringement declaratory judgment action roughly a month after filing an ANDA application to market a generic pharmaceutical potentially covered by the patent-in-suit. Indeed, the plaintiff filed its suit mere weeks after providing the defendant-patentee with notice of the ANDA-application and demanding that the defendant-patentee agree to a covenant not to sue. The district court held that plaintiff's unilateral actions could not create an actual controversy sufficient to confer subject matter jurisdiction, because there was no indication that the defendant-patentee would sue. 2008 WL 1767044, at *2–3. The district court relied on those same facts to hold in the alternative that it would have declined to exercise jurisdiction as a matter of discretion. *Id.*, at *4 ("In particular, plaintiff's allegation of jurisdiction rests on the existence of the'838 patent, plaintiff's filing of an ANDA, and defendant's failure to immediately agree to a covenant not to sue."). But *Impax*'s facts

---

[5] *Fresenius* was also decided before *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 132 n.11 (2007), which overruled the Federal Circuit's "reasonable apprehension of imminent suit" test and replaced it with the "totality of the circumstances" test. *See Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1374 (Fed. Cir. 2011). Thus, *Fresenius'* central holding is based on an erroneous legal standard.

are wholly different from this case, where K.Mizra—a monetizing entity with an established pattern of filing suit against companies promptly after sending enforcement letters, Millikan Decl. ¶ 7—levelled a direct charge of infringement against Netskope and asserted that Netskope's activities "need[ed]" to be "regularized." Moreover, because of the unique facts before the *Impax* court, it had no occasion to address the Federal Circuit's mandate in *Capo*.

Finally, *CEA* has no bearing on this case at all. *CEA* is a decision dealing with the ripeness of a declaratory judgment action arising out of bankruptcy proceedings, which proceedings in turn stemmed from the Environmental Protection Agency's decision to notify a company about potential liability for remediation of a landfill. 838 F.2d at 36 ("For the reasons stated below, we agree with the district court that this suit is not ripe.").

Disregarding the inapposite nature of these cases, K.Mizra cites them for their reliance on policy—*i.e.*, that a suit is "premature" if hearing it would "reduce the incentive for potential infringers to communicate with patentees before filing suit." ECF 17 at 12 (citation omitted). But that rationale, which stems from cases such as *EMC Corp. v. Norand Corp.*, 89 F.3d. 807, 810 (Fed. Cir. 1996), cited by the *Fresenius* court, is inapplicable here. In *EMC*, the Federal Circuit identified that when a declaratory judgment plaintiff uses a suit as "a tactical measure" to improve its "posture in [] *ongoing* negotiations" with a patentee, the suit does not serve the purposes that the Declaratory Judgement Act was designed to serve. *Id.* at 815 (emphasis added).

That is not the situation here, however. K.Mizra, an entity who aggressively monetizes its patents, sent Netskope a letter directly charging Netskope with infringing the '705 patent, casting a cloud of uncertainty over Netskope's business. Importantly, no negotiations had occurred or were ongoing at the time Netskope filed suit. Millikan Decl. ¶ 12. As recognized by the Federal Circuit's decision in *Capo*, resolving the present controversy between Netskope and K.Mizra thus serves, and is not contrary to, a fundamental purpose of the Declaratory Judgement Act: "afford[ing] relief from uncertainty or insecurity" from "accused liability for patent infringement." *Capo*, 387 F.3d at 1357 (citations omitted); *see also Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1289 (Fed. Cir. 2007) ("Even if [a declaratory judgment suit] had the effect of placing [the plaintiff]

1    in a more favorable negotiating positions, that effect is not a sufficient reason to decline to hear the

2    suit.").

3        Additionally, while K.Mizra cites *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341

4    (Fed. Cir. 2005) in passing, that case supports Netskope for reasons similar to *Capo*. In *Coyle*, the

5    district court dismissed a declaratory judgment suit, holding it "did not serve the objectives of the

6    Act and was merely anticipatory." *Id.* at 1344–45, 1347. The Federal Circuit reversed and remanded,

7    reasoning that the defendant-patentee's "forceful threats created a cloud over [the plaintiff] EFI's

8    business, shareholders, and customers, and EFI's potential liability increased as it continued to sell

9    the allegedly infringing products." *Id.* at 1347. As a result, the plaintiff was "entitled under the

10   Declaratory Judgment Act to seek a timely resolution of [the defendant-patentee's] threats of

11   litigation and [to] remove itself from 'the shadow of threatened infringement litigation.'" *Id.* at

12   1347 (citation omitted).

13       Numerous district courts have denied motions to decline hearing declaratory judgment

14   actions under analogous circumstances. *See, e.g.*, *Ebates Performance Mktg., Inc. v. MyMail, Ltd.*,

15   No. 20-cv-04768, 2021 WL 121130, at *8 (N.D. Cal. Jan. 13, 2021) (denying motion to

16   discretionarily decline to exercise jurisdiction over declaratory judgment suit: "Defendant argues

17   that the Court should decline declaratory judgment jurisdiction because the instant case was filed

18   while the parties were in licensing negotiations. Mot. at 8. However, the parties were not in

19   licensing negotiations."); *Plantronics, Inc. v. Callpod, Inc.*, No. 14-cv-04639, 2015 WL 293412, at

20   *4–5 (N.D. Cal. Jan. 21, 2015) (same: "Unlike the negotiations in *EMC*, the negotiations between

21   Callpod and Plantronics were not active at the time this complaint was filed."). More importantly,

22   declining jurisdiction here would be an abuse of discretion, as *Capo* and *Coyle* demonstrate. *See*

23   *Capo*, 337 F.3d at 1353–55, 1357–58 (reversing, as an abuse of discretion, district court's decision

24   to decline to hear declaratory judgment action for non-infringement where defendant-patentee had

25   asserted that plaintiff was "racing forward to infringement" and that defendant-patentee "would

26   win an infringement suit"); *Coyle*, 394 F.3d at 1344–45, 1347.

27       Given that K.Mizra's positions find no support in the caselaw, the Court should deny

28   K.Mizra's motion to dismiss on this ground as well. Netskope's declaratory judgment action is

1  proper and should be allowed to proceed.

2  **V.      CONCLUSION**

3         For the foregoing reasons, the Court should deny K.Mizra's motion to dismiss for lack of

4  personal jurisdiction and its motion to decline hearing Netskope's declaratory judgment action as

5  a matter of discretion. To the extent the Court is not convinced that it can exercise personal

6  jurisdiction over K.Mizra, the Court should permit Netskope to conduct limited discovery to further

7  develop the factual record, and should continue K.Mizra's motion for sixty days while that

8  discovery is conducted.

9

10

11
   DATED:  August 15, 2025                    **PERKINS COIE LLP**
12
                                              By: */s/ Thomas N. Millikan*
13                                                Thomas N. Millikan
                                                  TMillikan@perkinscoie.com
14                                                Joseph P. Reid
                                                  JReid@perkinscoie.com
15                                                Andrew N. Klein
                                                  AKlein@perkinscoie.com
16
                                                  Attorneys for Plaintiff
17                                                Netskope, Inc.

18

19

20

21

22

23

24

25

26

27

28