Thomas N. Millikan, Bar No. 234430
TMillikan@perkinscoie.com
Joseph P. Reid, Bar No. 211082
JReid@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, CA  92130
Telephone:  858.720.5700
Facsimile:  858.720.5799

Andrew N. Klein, Bar No. 300221
AKlein@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA  94304-1212
Telephone:  650.838.4300
Facsimile:  650.838.4350

Kevin A. Zeck (admitted pro hac vice)
KZeck@perkinscoie.com
1301 2nd Street, Suite 4200
Seattle, WA 98101
Telephone: 206.359.3002
Facsimile: 206.359.4002

*Attorneys for Plaintiff*
Netskope, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETSKOPE, INC.,<br><br>                    Plaintiff,<br><br>      v.<br><br>K.MIZRA LLC,<br><br>                    Defendant. | Case No. 3:25-cv-04833-RS<br><br>**PLAINTIFF NETSKOPE, INC.'S SUPPLEMENTAL OPPOSITION TO DEFENDANT K.MIZRA'S MOTION TO DISMISS** |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................. 1
II.  SUMMARY OF JURISDICTIONAL DISCOVERY ......................................................... 2
III. JURISDICTIONAL DISCOVERY CONFIRMED THAT K.MIZRA'S PERSONAL-JURISDICTION MOTION SHOULD BE DENIED ................................... 7
IV.  THE COURT SHOULD DECLINE K.MIZRA'S INVITATION TO COMMIT ERROR WITH RESPECT TO DECLARATORY JUDGMENT JURISDICTION ........ 11
V.   CONCLUSION ................................................................................................................. 12

# TABLE OF AUTHORITIES

**CASES**

*Advanced Med. Designs, Inc. v. Corbin Clinical Res., LLC*,
  2022 U.S. Dist. LEXIS 238568 (N.D. Ga. Apr. 1, 2022) ......................................................... 8

*Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*, 191 F. Supp. 3d 1007 (N.D. Cal. 2016) ......................................... 10

*Capo, Inc. v. Dioptics Medical Products, Inc.*,
  387 F.3d 1352 (Fed. Cir. 2004) .............................................................................. 2, 11, 12

*Electronics for Imaging, Inc. v. Coyle*,
  394 F.3d 1341 (Fed. Cir. 2005) .................................................................................... 11

*Frensenius USA, Inc. v. Transonic Sys.*,
  207 F. Supp. 2d 1009 (N.D. Cal. 2001) ......................................................................... 11, 12

*Impax Labs., Inc. v. Medicis Pharm. Corp.*,
  No. C-08-0253, 2008 WL 1767044 (N.D. Cal. Apr. 16, 2008) ........................................ 11, 12

*In re Combustion Equip. Assocs., Inc.*,
  838 F.2d 35 (2d Cir. 1988) ....................................................................................... 11, 12

*Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*,
  910 F.3d 1199 (Fed. Cir. 2018) ..................................................................................... 8, 9

*Juniper Networks, Inc. v. Swarm Tech. LLC*,
  No. 20-cv-3137, 2021 WL 6049924 (N.D. Cal. Dec. 21, 2021) .............................................. 7

*Lyft, Inc. v. Quartz Auto Techs. LLC*,
  No. 21-cv-01871, 2021 WL 6618867 (N.D. Cal. Sept. 7, 2021) ............................................ 7

*PopSockets LLC v. Flygrip, Inc.*,
  No. 21-cv-02900, 2022 WL 17547954 (D. Colo. Oct. 27, 2022) ........................................... 7

*Trimble Inc. v. PerDiemCo LLC*,
  997 F.3d 1147 (Fed. Cir. 2021) .................................................................................... 8, 10

*Twitter, inc. v. VoIP-Pal.com, Inc.*,
  No. 3:21-cv-09773, 2022 WL 2905065 (N.D. Cal. July 22, 2022) ......................................... 8

*Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006) (en banc) ............................................................................ 8

## I. INTRODUCTION

After five months and tens of thousands of dollars in discovery costs, the record plainly demonstrates what Netskope has maintained from the very start: K.Mizra is subject to this Court's jurisdiction. Indeed, the discovery this Court ordered—and K.Mizra fought at every turn—has now exposed K.Mizra's claims of no jurisdiction to be nothing but a frivolous sham that push the boundaries of the duty of candor to this Court.

K.Mizra originally filed its motion to dismiss telling this Court that the only basis for jurisdiction against it amounted to "a single notice letter." By the time of the reply, K.Mizra had retreated, contending its relevant interactions with California at most included "nine communications over a period of four years." Jurisdictional discovery, however, plainly demonstrated that:

- K.Mizra, a company founded as a California corporation, was operated as such until [REDACTED]

- While operating in California, [REDACTED]

- Since its departure from California, K.Mizra has [REDACTED];

- As to the '705 patent, which K.Mizra expressly asserted against Netskope in correspondence, K.Mizra sent [REDACTED]

  - [REDACTED]

  - [REDACTED]

1  ███████████████████████████████████
2  █████████████████.

3      Any of these salient facts would have undermined K.Mizra's motion to dismiss. Taken
4  together, this collection of facts demonstrates not just specific jurisdiction over K.Mizra's assertion
5  of the '705 patent against Netskope, but that K.Mizra's motion to dismiss for personal jurisdiction
6  was frivolous and multiplied these proceedings unnecessarily. K.Mizra's withholding of these facts,
7  and engaging in motion practice that implies the absence of these facts, demonstrates a pattern of
8  malfeasance and obfuscation that should not be countenanced.

9      With respect to its motion asking the Court to decline hearing Netskope's declaratory
10 judgment jurisdiction, K.Mizra had no answer to Netskope's opposition argument and cited
11 authorities. K.Mizra instead raised only distractions in its reply brief. The Court should follow the
12 straightforward mandate of *Capo* and decline to accept K.Mizra's invitation to commit error.

13     Accordingly, the Court should deny K.Mizra's motion to dismiss in its entirety and allow
14 this case to move forward with no additional delays.[1]

## II.   SUMMARY OF JURISDICTIONAL DISCOVERY

16     The Court ordered jurisdictional discovery on September 4, 2025. ECF No. 29. Netskope
17 issued interrogatories and requests for production in due course on September 19. K.Mizra
18 responded to these requests on October 27.

19     While K.Mizra's interrogatory responses largely relied on identification of produced
20 documents, certain statements within the interrogatories are notable. Interrogatory No. 3 requested
21 a description of "all communications and agreements K.Mizra has had with any person or entity in
22 California related to patent(s) or patent licensing since K.Mizra's inception." Zeck Supp. Opp.
23 Decl., Ex. 1 (K.Mizra's Interrog. Resps.) at 6.[2] In that response, K.Mizra ████████
24 ███████████████████████████

---

[1] K.Mizra has filed a similar motion to dismiss against Google, and likewise took the same fact-withholding approach there that it did with Netskope. *See Google LLC v. K.Mizra LLC*, No. 3:25-cv-08107 (N.D. Cal.), ECF No. 24 (Nov. 17, 2025). The *Google* motion remains pending.
[2] Unless noted otherwise, all exhibits are exhibits to the Declaration of Kevin A. Zeck in Support of Netskope's Supplemental Opposition Brief, which has been filed concurrently herewith.

1   █████████████████████████████████████████████████████████████
2  ████████████████████████ It otherwise stated that ███████████
3  █████████████████████████████████████████████████████████████
4  ███████████████████████████ These representations would turn out to be misleading,
5  at best. As described below, K.Mizra ███████████████████████
6  █████████████████████████████████████████████████████████████

    Similarly, Interrogatory No. 4 requested that K.Mizra "[i]dentify each and every California Company K.Mizra has contacted regarding patent licensing since its formation in 2019." K.Mizra, however, ████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████

    Lastly, Interrogatory No. 5 requested an identification of "any and all vendors you utilize that have offices located in California." *Id.* at 11. ███████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
████████████████████████████ Bunsow De Mory's website, whether in 2021 or in April 2025 (shortly before Netskope filed the Complaint in this case[3]), identifies only that it has one office, *in California*. Exs. 3, 4.

    K.Mizra ██████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████

---

[3] Netskope filed the Complaint in this case on June 6, 2025. ECF No. 1. The two closest website captures for Bunsow's website, available from archive.org are from April 17, 2025 and June 15, 2025 (a week after the complaint was filed). The June 15 capture is the same as the April 17 capture.

[redacted] This led to the Parties filing the stipulation at ECF No. 32, which the Court granted.

[redacted] K.Mizra's initial production [redacted]

[4] [redacted footnote]

-4-

SUPP. OPP. TO MOTION TO DISMISS
CASE NO. 3:25-cv-04833-RS

1  Thus, the first production showed that ███████████████████████████
2  ███████████████████████████████████████████████████████
3       Moreover, the first production also included ██████████████████
4  ███████████████████████████████████████████████████████
5  ███████████████████████████████████████████████████████
6  ███████████████████████████████████████████████████████
7  ███████████████████████████████████████████████████████
8  ███████████████████████████████████████████████████████
9  ███████████████████████████████████████████████████████
10 ███████████████████████████████████████████████████████
11 ███████████████████████████████████████████████████████
12 ███████████████████████████████████████████████████████
13 ███████████████████████████████████████████████████████
14 ███████████████████████████████████████████████████████
15 ███████████████████████████████████████████████████████
16 ████████████████████████████
17       ████████████████████████████████████████████████████
18 ███████████████████████████████████████████████████████
19 ███████████████████████████████████████████████████████
20 ███████████████████████████████████████████████████████
21 ███████████████████████████████████████████████████████
22 ███████████████████████████████████████████████████████
23 ████████████████████████
24       K.Mizra made its first production of emails on December 17, 2025, with subsequent
25 productions following on December 23, 2025 and January 2, 2026. These productions █████
26 
27 [5] ████████████████████████
28 ████████████████████

-5-   SUPP. OPP. TO MOTION TO DISMISS
      CASE NO. 3:25-cv-04833-RS



---

[6] Dovel & Luner's sole office is in Santa Monica, California. https://www.dovel.com/contact/

### III. JURISDICTIONAL DISCOVERY CONFIRMED THAT K.MIZRA'S PERSONAL-JURISDICTION MOTION SHOULD BE DENIED

K.Mizra's reply brief raised just two contentions regarding a purported lack of personal jurisdiction. First, K.Mizra argued that the nine contacts Netskope had identified in its opposition brief were insufficient, although it did not deny that its assertion letter to Netskope constituted conduct "purposefully directed" at California. ECF No. 28 at 2-3, 5 ("It would be unreasonable for the Court to exercise specific personal jurisdiction over K.Mizra based on the isolated and sporadic contacts identified by Netskope."). Second, K.Mizra disputed one, and only one, of the *Burger King* reasonableness factors: purported burden to K.Mizra. With respect to that factor, K.Mizra implied that litigation in some other, unspecified forum would be less expensive than litigation in California. *Id.* at 4 ("Netskope is also incorrect about the burden K.Mizra would shoulder if subjected to jurisdiction in this Court.").

K.Mizra's arguments about insufficient contacts have now been shown to be both wrong and frivolous. To begin, K.Mizra's reply had no answer to the recent decisions from courts in this Circuit, cited by Netskope, which held that sending assertion letter(s) constitutes activity purposefully directed at a forum, satisfying the first two prongs of the personal jurisdiction test for a declaratory judgment claim regarding the patent(s) identified in the letter(s). *See*, *e.g.*, *PopSockets LLC v. Flygrip, Inc.*, No. 21-cv-02900, 2022 WL 17547954, at *7 (D. Colo. Oct. 27, 2022) ("Federal Circuit precedent dictates that [enforcement] letters such as these sent to the forum are sufficient to satisfy the first two *Inamed* factors and thereby establish the defendant's minimum contacts with the forum."); *Juniper Networks, Inc. v. Swarm Tech. LLC*, No. 20-cv-3137, 2021 WL 6049924, at *2 (N.D. Cal. Dec. 21, 2021) ("In the declaratory judgment context, warning letters satisfy the requirement of minimum contacts … ."); *Lyft, Inc. v. Quartz Auto Techs. LLC*, No. 21-cv-01871, 2021 WL 6618867, at *1, 2 (N.D. Cal. Sept. 7, 2021) (Quartz's two emails and several phone calls to Lyft's counsel in California discussing patents at issue constituted activity "purposefully [] directed [] at forum residents"). Indeed, K.Mizra's reply brief ignored these cases altogether, even though they should be dispositive.

K.Mizra's reply instead appeared to contend that, even though there may be sufficient minimum contacts, those contacts were "sporadic" and would not satisfy the fairness prong of Due Process Clause. K.Mizra also contended that *Trimble* was limited to a higher volume of communications than those at issue here. ECF No. 28 at 6. However, in *Trimble*, the Federal Circuit held that even a single cease-and-desist letter may satisfy the "purposeful availment" test. *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147 (Fed. Cir. 2021) (citing *Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*, 910 F.3d 1199 (Fed. Cir. 2018); *Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006) (en banc)). And beyond communications with the declaratory judgment plaintiff, the Federal Circuit specifically directed courts to assess "'extra-judicial patent enforcement' targeting business activities in the forum state" when assessing reasonableness. *Trimble*, 997 F.3d. at 1156. As detailed below, K.Mizra's '705 patent extra-judicial patent enforcement activities in California have been extensive.

Moreover, the single Georgia district court case that K.Mizra cited in an effort to limit *Trimble* bears no resemblance to the facts here. *Advanced Med. Designs, Inc. v. Corbin Clinical Res., LLC*, 2022 U.S. Dist. LEXIS 238568 (N.D. Ga. Apr. 1, 2022). First, the *Advanced Medical* court held that Georgia's long arm statute did not extend to limits of due process, and thus "[a] letter addressed to the forum state cannot by itself justify the exercise of specific jurisdiction." *Id.* at *5-6, *8. Here, California's long-run statute extends further, rendering *Advanced Medical*'s reasoning inapplicable. ECF No. 20 at 4 (citing *Twitter, inc. v. VoIP-Pal.com, Inc.*, No. 3:21-cv-09773, 2022 WL 2905065, at *1 (N.D. Cal. July 22, 2022)). Second, the *Advanced Medical* court found that the declaratory judgment defendant had no "presence" in Georgia other than its limited contacts through counsel with the declaratory judgment plaintiff. *Id.* at *14-15. Here, in contrast, K.Mizra was formed in California[8] and ███████████████████████████████

---

[8] K.Mizra was formed as Delaware LLC by Charles Hausman while living in Los Angeles, and at that time had its principal place of business in Los Angeles, California. https://bizfileonline.sos.ca.gov/api/report/GetImageByNum/032125185005050059254242104234062188077037064070.

1  K.Mizra retreats to "policy considerations discussed in *Red Wing Shoe Co.*" and insists that "public interest policies encouraging settlement of legal claims support the conclusion that exercising jurisdiction over K.Mizra would be unreasonable." ECF No. 28 at 2, 3. But the conduct at issue here is nothing like a single notice-letter or two, sent by a patentee unconnected with the forum (as contemplated in *Red Wing* or *Advanced Medical*). Instead, K.Mizra was formed in California, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

The facts of this case are therefore stronger than those in *Jack Henry*, where personal jurisdiction was upheld based on eleven letters sent to eleven unrelated banks: "PET has charged infringement and threatened litigation against numerous banks residing and conducting business in the Northern District [of Texas]. … In the circumstances herein, PET has met the minimum contacts requirement without offense to due process." *Jack Henry*, 910 F.3d at 1206. Here, as jurisdictional discovery showed, K.Mizra sent ████████████████████████████████████████████ ██████████████████████████████████████████. Sufficient minimum contacts are thus clearly established.[9] Moreover, when considering K.Mizra's other "'extra-judicial patent

---

[9] In an attempt to avoid *Jack Henry*, K.Mizra contends in a footnote that the Federal Circuit's decision was premised on specific circumstances that are distinguishable, *i.e.*, that "the same party was providing the underlying accused technology to each letter recipient and that technology provider and all eleven infringers collectively brought the declaratory judgment action." ECF No. 28 at 3 n.3. But the Federal Circuit did not mention this circumstance in issuing its personal jurisdiction ruling. Instead, it relied on the fact that the defendant had "undertaken a licensing program, with threats of litigation, directed to the Banks conducting banking activity in the [forum]." *Id.* at 1205.

enforcement' activity" covering the '705 patent, at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See Trimble*, 997 F.3d. at 1156. As the Federal Circuit noted in *Trimble*: "An entity that repeatedly sends communications into a forum state 'clearly has 'fair warning that [its] activity may subject [it] to the jurisdiction of a foreign sovereign.'" *Id.* at 1155 (citation omitted). In sum, K.Mizra's contentions about having only "sporadic" contacts with California related to the '705 patent are not only incorrect, but wholly frivolous.

As to K.Mizra's arguments regarding the *Burger King* factors, K.Mizra disputes only one factor—burden—which is insufficient to establish a "compelling case" of unreasonableness. This factor is not "dispositive," and thus it cannot alone defeat the exercise of jurisdiction. *See, e.g., Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*, 191 F. Supp. 3d 1007, 1018 (N.D. Cal. 2016) (rejecting that burden to Canadian company from litigating in California rendered the exercise of jurisdiction unreasonable, noting: "none of [the *Burger King*] factors is dispositive"). But even if it could, the facts revealed by jurisdictional discovery confirm that K.Mizra would not be significantly burdened by litigation in California. First, K.Mizra already affirmatively commenced litigation in California against Epson, undermining the notion that litigation in California for K.Mizra is unduly burdensome. *See generally K.Mizra LLC v. Epson Am., Inc.*, No. 8:25-cv-00027-MWF-ADS (C.D. Cal.) (K.Mizra retaining California counsel at Payne & Fears). Second, K.Mizra operated in California ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Third, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, making its contention about undue burden disingenuous at best. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[10] K.Mizra's burden contentions are unavailing, and the Court should deny K.Mizra's motion to dismiss for lack of personal jurisdiction.

---

[10] Moreover, as the *Autodesk* court identified "advances in modern transportation and telecommunications have significantly lessened the burden of litigation in distant forums," and that where the movant has retained competent counsel in this District to represent it, the factor weighs in favor of the movant "only slightly." *Autodesk*, 191 F. Supp. 3d at 1019 (citations omitted).

## IV. THE COURT SHOULD DECLINE K.MIZRA'S INVITATION TO COMMIT ERROR WITH RESPECT TO DECLARATORY JUDGMENT JURISDICTION

K.Mizra's reply arguments concerning declaratory judgment jurisdiction boil down to assertions that (1) Netskope "overstated" the holding of *Capo, Inc. v. Dioptics Medical Products, Inc.*, 387 F.3d 1352 (Fed. Cir. 2004), (2) the Court should ignore *Capo*'s plain language in view of distinguishable cases (*Frensius, Impax,* and *In re CEA*), and (3) courts have discretion to preclude declaratory judgment actions whenever a patent holder sends an infringement demand letter and purportedly "invites negotiations." ECF No. 28 at 6–9.

As to the first assertion, Netskope did not "overstate" *Capo*—Netskope directly quoted *Capo*, and does so again here: "Absent [well-founded reasons for declining to entertain a declaratory judgment action], precedent establishes that when there has been a direct charge of infringement by the patentee, and an actual controversy exists due to ongoing activity that has been accused of infringement, the accused infringer has the right to resolve the dispute." 387 F.3d at 1355. K.Mizra offers no well-founded reasons, only a generalized policy argument that even though it directly charged Netskope with infringement of the '705 patent and called Netskope a "defendant," ECF No. 20-8 at 2, 44, a potential opportunity for supposed "negotiations" should preclude declaratory judgment jurisdiction. ECF No. 28 at 6 ("accepting jurisdiction here would discourage settlement discussions and negotiations"). K.Mizra, of course, downplays its pre-existing monetization campaign on the '705 patent against others, and K.Mizra's sue-happy strategy (in its preferred jurisdictions of the Eastern and Western Districts of Texas) if companies do not accede to it. Ex. 65. K.Mizra's assertion thus creates a "cloud" over Netskope's business, and Netskope is entitled to have this dispute resolved now. *See, e.g.*, *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) (holding that declaratory-judgment plaintiff was "entitled under the Declaratory Judgment Act to seek a timely resolution of [defendant-patentee's] threats of litigation and [to] remove itself from 'the shadow of threatened infringement litigation'").

K.Mizra next re-raises the three cases it primarily cited in its motion to dismiss: *Frensenius USA, Inc. v. Transonic Sys.*, 207 F. Supp. 2d 1009 (N.D. Cal. 2001); *Impax Labs., Inc. v. Medicis Pharm. Corp.*, No. C-08-0253, 2008 WL 1767044 (N.D. Cal. Apr. 16, 2008); and *In re Combustion*

*Equip. Assocs., Inc.*, 838 F.2d 35 (2d Cir. 1988). Netskope already explained why these cases are readily distinguishable, ECF No. 20 at 14–15, and K.Mizra's reply did not address the distinguishable circumstances identified by Netskope. Instead, K.Mizra focused on side issues (that *Frensenius* preceding *Capo* is an supposedly unavailing argument); rhetorical questions (that *Impax* "surely had occasion to address [*Capo*] and, what, chose not to do so?" and this somehow supports its arguments against exercising discretion), and general policy considerations (that "the *CEA* case is just an example of several cases where courts have applied a similar rationale to the one advanced by K.Mizra"). K.Mizra's arguments about these cases are immaterial.

K.Mizra's argument is, at bottom, that this Court should ignore *Capo*'s plain language in favor of generalized policy considerations. But *Capo* addressed policies behind the Declaratory Judgment Act in formulating its rule, and that rule requires "well-founded reasons" to decline declaratory judgment jurisdiction in circumstances such as these. 387 F.3d at 1357 ("There must be a sound basis for refusing to adjudicate an actual controversy, for the policy of the Act is to enable resolution of active disputes."). K.Mizra has provided no such "well-founded reasons"— *e.g.*, no tactical attempt to increase leverage in negotiations or otherwise—and as such K.Mizra requests that this Court commit reversible error. The Court should decline K.Mizra's invitation. After all, the Court has ample discretion to *hear* Netskope's declaratory judgement claim, something K.Mizra does not dispute.

## V.     CONCLUSION

Now that jurisdictional discovery has confirmed K.Mizra's motion to dismiss is frivolous, Netskope again respectfully requests the Court deny K.Mizra's motion.

| | | |
|---|---|---|
| 1 | **DATED:** January 9, 2026 | **PERKINS COIE LLP** |
| 2 | | By: */s/ Thomas N. Millikan* |
| | | Thomas N. Millikan |
| 3 | | TMillikan@perkinscoie.com |
| | | Joseph P. Reid |
| 4 | | JReid@perkinscoie.com |
| 5 | | Andrew N. Klein |
| | | AKlein@perkinscoie.com |
| 6 | | Kevin A. Zeck |
| | | KZeck@perkinscoie.com |
| 7 | | *Attorneys for Plaintiff* |
| | | *Netskope, Inc.* |